UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TARIQ SHABAZZ, | ) | CASE NO.  1:24-cv-604 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| FRANK LAROSE, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Before the Court is Defendant Frank LaRose's ("Defendant") motion to dismiss *pro se* Plaintiff Tariq Shabazz's ("Plaintiff") Complaint.  (Doc. No. 5.)  Plaintiff filed an opposition. (Doc. No. 6.)  For the reasons explained below, the Defendant's motion to dismiss is GRANTED and this case is DISMISSED.

**I.  Background**

In Ohio, there are three ways a candidate for political office can be placed on the general election ballot: (A) secure the nomination in a partisan primary; (B) file a nominating petition to run as an independent candidate; or (C) file a declaration of intent to be a write-in candidate. This case involves the latter two.  From a liberal reading of Plaintiff's complaint, he seeks to have his name appear on the general election ballot as an independent candidate or be allowed to proceed as a write-in candidate.

Plaintiff states he is a black disabled veteran and "an independent candidate (Official Write-in) aspiring to represent Ohio in the United States Senate."  (Doc. No. 1, PageID #1.)  He claims that candidates for political office in the same position as Plaintiff are unduly burdened by

the requirements found in R.C. § 3513.05 and R.C. § 3513.257. Under R.C. § 3513.257, an independent candidate seeking statewide office, as Plaintiff does here, must file a statement of candidacy and nominating petition containing the signatures of at least 5,000 qualified electors. R.C. § 3513.257(A). However, under R.C. § 3513.05, party candidates seeking access to a primary election ballot must collect only 1,000 qualified signatures. R.C. § 3513.05. Plaintiff also alleges that the process for collecting signatures outlined in R.C. § 3513.257 places a higher burden on black and disabled individuals, including because it prohibits obtaining signatures online. (*Id.* at PageID #2–3.)

Plaintiff filed this action asserting the following causes of action: violation of the First and Fourteenth Amendments (Count One); the Americans with Disabilities Act ("ADA") (Count Two); and the Voting Rights Act ("VRA") (Count Three). Plaintiff named Frank LaRose as a defendant in his official capacity as the Ohio Secretary of State.

Plaintiff claims that Ohio Revised Code §§ 3513.05 and 3513.257 imposes "an unreasonable burden on independent candidates, particularly those from marginalized communities, including Black Americans and individuals with disabilities." (Doc. No. 1, PageID #1.) Specifically, Plaintiff alleges these statutes violate the First and Fourteenth Amendments because they impose an undue burden on political speech and equality of independent candidates. (*Id.* at PageID #3.) He further alleges that the statutes violate the ADA because there lacks an accommodation for candidates with disabilities. (*Id.*) Lastly, Plaintiff alleges the statutes violates the VRA because of the disparate impact on ballot access. (*Id.*) Plaintiff seeks declaratory and injunctive relief as well as monetary damages. (*Id.*)

On May 16, 2024 Defendant filed a motion to dismiss asserting dismissal is warranted under either Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. <u>Legal Standard</u>

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a Court's subject matter jurisdiction. Federal courts are courts of limited jurisdiction, and, unlike state trial courts, they do not have general jurisdiction to review all questions of law. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). Instead, they have only the authority to decide cases that the Constitution and Congress have empowered them to resolve. *Id.* Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citation omitted).

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. Fed. R. Civ. P. 12(b)(1); *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994). In a facial attack, the challenger asserts that the allegations contained in the Complaint are insufficient on their face to invoke federal jurisdiction. *See In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 884–85 (N.D. Ohio 2010) (citing *Ohio Hosp. Ass'n v. Shalala*, 978 F. Supp. 735, 739 (N.D. Ohio. 1997)). By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Id.* A challenge to subject matter jurisdiction may be considered a factual attack when the attack relies on extrinsic evidence, as opposed to the pleadings alone, to contest the truth of the allegations. *Id.* The plaintiff has the burden of proving subject matter jurisdiction in order to survive a motion to dismiss pursuant to Rule 12(b)(1). *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). Lack of subject matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

When deciding a Motion to Dismiss under Federal Civil Rule 12(b)(6), the function of

the Court is to test the legal sufficiency of the complaint. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) clarified what plaintiffs must plead to survive a motion to dismiss under Rule 12(b)(6). A court must construe the complaint in the light most favorable to the Plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Although a complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal* further explained the "plausibility" requirement, stating that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The Sixth Circuit has held that a court may consider allegations contained in the complaint, as well as exhibits attached to or otherwise incorporated in the complaint . . . ." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

When a plaintiff appears *pro se*, the pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520

4

(1972). However, a *pro se* complaint must still adhere to "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## III. Analysis

### A. Standing

Defendant argues that Plaintiff lacks standing to bring this suit. Federal jurisdiction is limited to actual "Cases" and "Controversies." U.S. CONST. art. III. To establish standing, Plaintiff must establish: (1) an actual, concrete, particular, injury-in-fact; (2) which can be fairly traced to the challenged action of the defendant; and (3) that has a likelihood, as opposed to mere speculation, that it will be redressed by a favorable decision by this Court. *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000).

Defendant argues Plaintiff lacks standing to the extent Plaintiff's lawsuit pertains to his possible write-in candidacy. Specifically, Defendant contends that Plaintiff failed to establish an injury-in-fact because he refers to himself as "an independent candidate (Official Write-in)" for the United States Senate. (Doc. No. 5, PageID #19.) Because write-in candidates are not required to obtain signatures, and instead only file a declaration of intent, Defendant argues Plaintiff lacks standing. (*Id.*) Defendant is correct that to the extent Plaintiff seeks to be a write-in candidate, he has no standing to challenge R.C. § 3513.257 because he has not suffered an injury.

However, Plaintiff's lawsuit also pertains to his potential candidacy as an independent candidate. For that, Plaintiff has standing. Defendant argues otherwise, asserting that Plaintiff lacks standing to the extent Plaintiff's lawsuit pertains to his possible independent candidacy because Plaintiff missed the deadline to appear on the ballot as an independent candidate, which was March 18, 2024. (*Id.* at PageID #20.) But a natural reading of Plaintiff's Complaint shows

he alleges the statutory requirements were the reason he was unable to make the March 18, 2024 deadline. Those requirements caused him injury fairly traceable to Defendant. Plaintiff has standing to bring his claim relating to his independent candidacy.

### B. First and Fourteenth Amendment

Plaintiff alleges the signature requirements in R.C. § 3513.05 and R.C. § 3513.257 violate the First and Fourteenth Amendment. (Doc. No. 1, PageID #3.) Defendant argues the claims fail because Plaintiff did not identify § 1983 as the mechanism to assert such claims. (Doc. No. 5, PageID #21.) A party may not assert direct constitutional claims and instead must assert those claims through a § 1983 claim. *See Smith v. Kentucky*, 36 F.4th 671, 675 (6th Cir. 2022) ("we have long held that § 1983 provides the exclusive remedy for constitutional violations"); *Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014) (same). While Plaintiff failed to cite § 1983 as the mechanism in which he brings his First and Fourteenth Amendment claims, that is not fatal. Section 1983 is the only vehicle in which Plaintiff could raise these claims, and the Court liberally construes his Complaint as asserting the constitutional claims through § 1983.

Defendant next argues courts have overwhelming found heightened qualification standards for independent candidates are constitutional. (Doc. No. 5, PageID #22.) Defendant is correct. In assessing ballot access laws, courts ask whether the law unduly burdens constitutional rights. *Hawkins v. DeWine*, 968 F.3d 603, 605 (6th Cir. 2020). To do so, courts use the *Anderson-Burdick* balancing test. *Id.* (first citing *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); then citing *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)); *Kishore v. Whitmer*, 972 F.3d 745, 749 (6th 2020) ("The *Anderson-Burdick* framework governs First and Fourteenth Amendment challenges to ballot-access restrictions"). The Sixth Circuit explained:

> Under the *Anderson-Burdick* framework, we first determine the burden the State's regulation imposes on the plaintiffs' First Amendment rights. When those rights are subjected to severe restrictions, the regulation is subject to strict scrutiny and must be narrowly drawn to advance a state interest of compelling importance. But when those rights are subjected only to reasonable, nondiscriminatory restrictions, the regulation is subject to rational-basis review because the State's important regulatory interests are generally sufficient to justify the restriction.

*Hawkins*, 968 F.3d at 605 (quotation and citations omitted). Utilizing this framework, courts have found that signature requirements for ballot access relating to independent candidates do not unduly burden constitutional rights and are rationally related to important State interests. *See Jenness v. Fortson*, 403 U.S. 431, 442 (1971) (upholding signature requirement for independent candidates where party candidates only needed to win a primary election); *Miller v. Lorain Cnty. Bd. of Elections*, 141 F.3d 252, 259 (6th Cir. 1998) (dismissing constitutional challenge to R.C. § 3513.257 and R.C § 3513.05 because higher signature requirement for independent candidates is rationally related to legitimate state interests); *Phillips v. Lorain Cnty. Bd. of Elections*, No. 16-cv-1689, 2016 WL 8224361, *3 (N.D. Ohio Sept. 16, 2016) (dismissing constitutional claims relating to increased signature collection requirements for independent candidates in R.C. § 3513.257 versus party candidates in R.C. § 3513.05); *State ex rel. Wilcoxson v. Harsman*, No. 24095, 2010 WL 3366193, at *9 (Ohio Ct. App. Aug. 26, 2010) (dismissing constitutional challenges to higher signature collection requirements for independent candidates under R.C. § 3513.257); *see also Lawrence v. Blackwell*, 430 F.3d 368, 375 (6th Cir. 2005) (dismissing challenge to R.C. § 3513.257's early filing deadline for collection of signatures for independent candidates).

Sixth Circuit precedent controls the Court's decision in this case. In *Miller*, plaintiff was an independent candidate who sought to run for the United State House of Representatives. *Miller*, 141 F.3d at 255. After the local board of elections denied him access to the ballot

7

because he did not get the requisite signatures, he sued. *Id.* He argued that the signature collection requirements for independent candidates in R.C. § 3513.257 was unconstitutional because the signature requirement was higher than that for candidates in political parties found in R.C. § 3513.05. *Id.* Utilizing the *Anderson-Burdick* framework, the Sixth Circuit rejected the First and Fourteenth Amendment claims. *Id.* at 256. The Sixth Circuit identified the burden as "an increased signature requirement for independent candidates." *Id.* The court identified the legitimate state interests as perseveration of the integrity of the election process, regulating the number of candidates to avoid voter confusion, and establishment of a modicum of support, among other things. *Id.* at 258. The Sixth Circuit found these justifications legitimate, particularly because a "state law requirement that a candidate make a preliminary showing of support is legitimate." *Id.* (citing *Celebrezze*, 460 U.S. at 788 n.9). On balance, the panel concluded that the increased signature requirement, in light of the state's justifications, was "not so burdensome as to render it unconstitutional." *Id.* The Sixth Circuit also explained that the comparison between political party candidates and independent candidates was like "comparing apples to oranges." *Id.* (citing *Anderson v. Mills*, 664 F.2d 600, 607 (6th Cir. 1981)). For party candidates, a candidate must obtain the requisite signatures for a primary election and then win the primary election. *Id.* For independent candidates, there is no primary election and signature collection is sole requirement for access to the general election ballot. *Id.* These two different routes, the Sixth Circuit explained, cannot be neatly compared. *Id.* at 258–59.

Here, as in *Miller*, the burden is an increased signature requirement for independent candidates. Like *Miller*, Defendant asserts interests already determined legitimate by the Sixth Circuit, including avoiding overcrowded ballots, avoiding voter confusion, and the duty to show support for the persons candidacy. This Court, like in *Miller*, cannot conclude that "the route

8

open to an independent candidate through a petition is more burdensome than that open to a party candidate." *Id.* at 259; *see also Wilcoxson*, 2010 WL 3366193, at *5 ("The State's interest in avoiding overcrowded ballots and voter confusion, in conjunction with a candidate's duty to show support for his or her candidacy, justifies the reasonable signature requirement for independent candidates under R.C. 3513.257 to appear on the general election ballot."). Plaintiff's contention that the disparity between party candidates and independent candidates violates the First and Fourteenth Amendments fails.

Plaintiff argues the ballot access laws violate the Fourteenth Amendment because they adversely affect disabled and black Americans. However, Plaintiff neither alleges nor explains how the Ohio law "unfairly or unnecessarily burdens 'the availability of political opportunity'" to these groups separate and apart from others. *Celebrezze*, 460 U.S. at 793. That is, Plaintiff does not explain how Ohio's facially neutral signature requirements, which applies to all independent candidates, disproportionately affects disabled and black candidates as compared to other similarly situated independent candidates.

**C.     Americans with Disabilities Act**

Plaintiff argues the lack of accommodation for candidates with disabilities in the signature collection and verification process violates the ADA because Ohio law prohibits online signatures. (Doc. No. 1, PageID #3.) He brings a claim under Title II of the ADA, asserting that the lack of accommodations for candidates with disabilities denies him equal access to the electoral process that other candidates have. (Doc. No. 6, PageID #31.) Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "A

9

plaintiff may allege disability discrimination [under Title II] under two available theories: intentional discrimination and failure to reasonably accommodate." *Knox Cnty. v M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023). Plaintiff's ADA claim appears to be a failure to accommodate claim. (Doc. No. 6, PageID #31.)

To succeed on "a failure-to-accommodate claim, the plaintiff must show the following: (1) he is disabled; (2) he was qualified to take part in the services, programs, or activities of the public entity; (3) he was excluded from participation in or denied the benefits of such services, programs, or activities; and (4) this exclusion or denial occurred by reason of his disability." *Keller v. Chippewa Cnty.*, 860 F. App'x 381, 385–86 (6th Cir. 2021) (quotations and citations omitted). Initially, Plaintiff does not sufficiently plead he has a qualifying disability under the ADA. While Plaintiff alleges he has a "service-connected disability," he does not explain what that disability is. There are no facts through which this Court can determine whether his "service-connected disability" is a qualified disability under the ADA. More importantly, Plaintiff fails to plead facts that connect his exclusion from the ballot with his disability. That is, Plaintiff pleads no facts to show he was denied meaningful access to the ballot by reason of his disability. For instance, Plaintiff does not plead facts sufficient to show how his disability prevents him from complying with the 5,000 in-person signature requirement. In short, Plaintiff has pleaded no facts that, if true, would show R.C. § 3513.257 excludes him from participation in ballot access by reason of his disability.

### D. Voting Rights Act

Plaintiff asserts a claim under the Voting Rights Act because of the "disparate impact of Ohio's ballot access laws on Black Americans and other minorities." (Doc. No. 1, PageID #3.) Plaintiff does not explain how the VRA applies to ballot access cases, which provisions of the

10

VRA are implicated by Ohio's ballot access laws, or how the ballot access signature requirement itself causes discrimination against minorities here. Because this claim is premised solely on legal conclusions it is not sufficiently pleaded to state a claim upon which relief may be granted. *Iqbal*, 556 U.S. at 677–78.

### E. Injunctive Relief and Request for Appointment of Counsel

Because the Court dismisses this action, the Court denies Plaintiff's request for injunctive relief and request for appointment of counsel. *See Jones v. Mays*, No. 19-cv-795, 2022 WL 3652949, *1 (M.D. Tenn. Aug. 24, 2022) (denying as moot injunctive relief and appointment of counsel after dismissal of case). As to injunctive relief, Plaintiff has not shown likelihood of success on the merits of his claim. He is therefore not entitled to injunctive relief. *See Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 632 (6th Cir. 2000) ("Because we conclude that Plaintiff has no likelihood of success on the merits, we need not consider whether he would otherwise be entitled to a preliminary injunction").

### IV. Conclusion

Defendant's Motion to Dismiss under Federal Civil Procedure 12(b)(6) (Doc. No. 5) is GRANTED and this action is DISMISSED. Plaintiff's request for declaratory and injunctive relief is DENIED. Plaintiff's request for appointment of counsel is also DENIED. The Court separately finds and certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED.**

**Date**: July 29, 2024

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE